Charles R. Weitershausen Agency v. Morgan

*McCrady & Nicklas* and *Linn V. Phillips*, for plaintiff.

*Peter Cooper*, for defendants.

SNYDER, P. J., Specially Presiding, and BROWN and CERCONE, JJ., June 10, 1958.—The matter presently before the court en banc is a motion of plaintiff for a new trial. It involves a suit in assumpsit in which plaintiff sought to recover a real estate brokerage commission on the sale of certain real estate of defendants under an alleged oral listing agreement. The jury returned a verdict in favor of defendants.

It appears from the evidence in the case that on or about 1944, defendants, then residents of the City of Pittsburgh, purchased certain real estate situate in Pittsburgh known as 1-10 Highland Court. In 1948, they moved to Beaufort, S. C., where they resided until the time of this suit. Management of the real estate in question was given to Scott & McCune, a real estate agency of Pittsburgh. Due to the illness of Mr. Morgan, defendants decided to sell their property and listed it for sale with Scott & McCune in January 1955, at a price of $115,000. On May 14, 1955, defendants received a tentative offer through Scott & McCune of $110,000, which was refused with notice that the prospective buyer would be given until the following Monday to meet the asking price of $115,000.

While these negotiations were pending, defendants received a telephone call from plaintiff inquiring whether or not the property was for sale and the amount of the asking price. Defendants advised plaintiff that the property was listed for sale with Scott & McCune at a price of $115,000, that they had received an offer through Scott & McCune which was less than the asking price, that they had been given until the fol-

lowing Monday to increase the offer to the asking price and that defendants would not consider any offer made through plaintiff until that time. Notwithstanding, plaintiff continued to make various phone calls to defendants concerning certain buyers who were interested in the property and tentative offers made by them. These calls were climaxed by a call stating that plaintiff had received an offer of $115,000, that a contract was being prepared and that Mr. Hacke, an officer of plaintiff company, would immediately fly to South Carolina and close the deal. Defendants advised plaintiff that they were not free to deal with it, and further that Mr. Morgan was ill and under a doctor's care, and therefore it was useless to make the trip. Plaintiff promptly sent the contract of sale to defendants.

On Friday after the aforesaid telephone conversations, Scott & McCune notified defendants that their offeror had met the asking price and requested defendants to execute their agreement of sale. Defendants did so and on the following Monday notified plaintiff to this effect. Plaintiff brought suit for commissions on the theory that these negotiations constituted a listing agreement which bound defendants to accept its offer. Defendants contended that at no time did they authorize plaintiff to secure a buyer for their property and the jury by its verdict found this as a fact.

The principal reasons argued in support of a new trial are: (1) That the trial judge committed substantial error in his charge; (2) that the trial judge refused to correct the error in the jury's charge at plaintiff counsel's request and took special exception thereto in the presence of the jury; (3) that the trial judge committed substantive error in refusing to withdraw a juror and continue the case on plaintiff's counsel's

motion after a colloquy between the trial judge and plaintiff's counsel which was highly prejudicial and harmful to plaintiff's case.

Plaintiff produced testimony to show that on May 18, 1955, Mr. Hacke, president of plaintiff company, called Mrs. Morgan by phone and asked her if she was interested in selling the property. She told him that she was, that she wanted $115,000 for it and that she was working on a deal with Scott & McCune real estate brokers. He asked her to supply him with information relative to income, taxes, etc. On the following morning, she called Mr. Hacke and gave him the requested information and told him that she had received in the morning mail an agreement from Scott & McCune for $110,000. Mr. Hacke told her that he had a buyer who was interested in that type of property, that if she wanted $115,000 for it, he would work on it, but he would not enter competition with another broker. She told him that "whichever agent got $115,000 that would be the agent to make the deal." Between the hours of 1 and 3 p.m. of the same day, he called her and told her he had an offer of $113,000 and $3,000 hand money. Mrs. Morgan told him she was taking her husband to the doctor and she would talk it over with him. Mr. Hacke called again about 20 minutes later and told her he had "got his buyer up to $115,000." Mrs. Morgan told him she would call him after talking with her husband at the doctor's office. About five o'clock Mrs. Morgan called Hacke who told her the terms of an agreement of sale which he had prepared and that he had made arrangements to fly down to Beaufort to have it executed. She told him a trip would be useless as her husband was ill and that the agreement should be sent by mail, and she would let him know on the following Monday morning after she had a chance to talk with her husband. The agreement was sent by mail and on Monday morning Mrs. Morgan called the office of

plaintiff and informed it that the deal was off, that the "first client had met price."

Plaintiff contends that these telephone conversations constituted a listing agreement whereby defendants employed plaintiff to secure a buyer for their property at a price of $115,000. These admissions at face value, far from establishing the formation of a listing contract where the sellers as moving parties employ a broker to secure a purchaser for their property at a given price for a commission, might readily and reasonably be found to show no more than a very energetic effort on the part of a broker to secure a seller for his purchaser. At any rate, the court submitted the question as to the existence of a listing contract to the jury, and in so doing was more favorable to plaintiff than the testimony warranted. Even more favorable to plaintiff's cause was the court's charge that if the jury found that defendants had no knowledge of the terms of agreement of sale, that is, that it had not been read to them by plaintiff or read by them, regardless of all the rest of the testimony, their verdict must be for defendants, but if they did receive such information, they were bound by the contract. If this was error, it was helpful and not prejudicial to plaintiff's case and therefore cannot form the basis for a new trial, the verdict being for defendants.

Plaintiff complains that the trial judge refused to correct the error in the jury's charge at plaintiff's counsel's request and took special exception thereto in the presence of the jury. We do not understand the nature of this complaint. There is nothing in the court's charge to indicate that the court took special exception to plaintiff's counsel's request that the alleged error be corrected. At the conclusion of the court's charge, counsel for plaintiff made an oral request that the court correct an alleged inaccurate statement of a portion of the testimony of Mrs. Morgan. The sub-

stance of the request was confusing and, we believe, inconsequential. In any event, the jury was directed to take their recollection of the testimony and not that of the court.

Plaintiff further complains that the court erred in refusing plaintiff's motion to withdraw a juror and continue the case after a colloquy between plaintiff's counsel and the court in the presence of the jury. After objection had been sustained to an improper statement by plaintiff's witness, Mr. Hacke, the witness in answer to another question deliberately repeated the improper statement. The court directed the jury to disregard the statement and cautioned the witness against repeating it. The court felt that plaintiff's counsel knew or should have known what his witness was going to say, that it was objectionable and that he should have cautioned him against it, and so stated to the counsel. Counsel is an able practitioner and his witness was well informed. We feel the court's criticism was justified under the circumstances and that it was not of such nature in itself to prejudice plaintiff's case. New trials for such reasons are to be avoided unless the errors complained of are plainly prejudicial to one of the parties; harmless errors can never be the basis for them: Fischer v. Commercial National Bank, 321 Pa. 200, 201.

For the above reasons, we find no basis whatever for the granting of a new trial. Hence the following:

*Order*

Now, June 10, 1958, plaintiff's motion for a new trial is overruled and a new trial is refused. An exception is noted for plaintiff. It is ordered the judgment be rendered on the verdict upon payment of the verdict fee.